# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:10CV136-RJC-DSC

| | | |
|---|---|---|
| **BRYAN WILLIAMS,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **MEMORANDUM AND RECOMMENDATION** |
| **v.** | **)** | |
| | **)** | |
| **TARGET CORPORATION,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**THIS MATTER** is before the Court on "Defendant's Rule 12(b)(6) Motion for Partial Dismissal" (document #2) and "Defendant's Memorandum of Law in Support of Rule 12(b)(6) Motion for Partial Dismissal" (document #3), both filed March 22, 2010; and the Plaintiff's "Memorandum of Law in Opposition to Defendant's 12(b)(6) Motion for Partial Dismissal" (document #6) filed on April 7, 2010. On April 19, 2010, Defendant filed "Defendant's Reply to Plaintiff's Memorandum in Opposition for Partial Dismissal" (document #7).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Motion is ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendant's Motion for Partial Dismissal be granted in part and denied in part, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Bryan Williams ("Plaintiff"), a black male, filed this action against Defendant Target Corporation ("Defendant") alleging violations of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981 and the North Carolina Equal Employment

Practices Act ("NCEEPA"), North Carolina General Statue § 143-422.2. Accepting the allegations of the Complaint as true, as we must at this early stage in the proceeding, Plaintiff was hired and employed by Defendant as a back room team member working at its retail location at 900 Metropolitan Avenue in Charlotte, North Carolina. Shawn Davis was also employed at that location by Defendant as an Executive Team Leader for the Human Resources Department . On August 14, 2008, Davis verbally attacked and berated Plaintiff with racial epithets. Davis called Plaintiff a "bitch-ass nigger," made several other derogatory statements related to Plaintiff's job performance and stated "we should have terminated this nigger while he was in Virginia." Davis' statements and treatment of Plaintiff were observed by Thomas (last name unknown), another supervisor employed at the Metropolitan Avenue retail location.

Plaintiff attempted to continue to work his shift but was unable after he reflected on Davis' conduct. Plaintiff subsequently left his shift within hours of the incident because of Davis' conduct. He considered his work environment dangerous and racially hostile. Because Plaintiff had suffered racial harassment at the hands of the Executive Team Leader for Human Resources and that conduct was observed by another human resources supervisor, Plaintiff could not report the incident to anyone working at the store. Plaintiff reported the incident by telephone to another Executive Team Leader, Evans Bridges. Bridges stated that he would investigate the matter and call Plaintiff back. When Bridges returned Plaintiff's call, he stated that Thomas had confirmed the statements made by Davis to Plaintiff. Bridges then asked Plaintiff if he thought that Davis was joking and asked why Plaintiff had not left immediately after the incident. Plaintiff informed Bridges that the conduct was not a joke, that it was offensive and that Plaintiff was unable to work under such conditions. Plaintiff requested to be transferred to another retail location where Davis did not work in order to avoid the hostile and offensive working conditions. After requesting a transfer due to the racial

harassment, Plaintiff was terminated by Defendant.  Plaintiff argues that he was discharged from his employment with Defendant subsequent to, and in retaliation for, his complaint to Bridges of racially discriminatory conduct and an offensive and hostile work environment.

On February 18, 2010, Plaintiff filed his Complaint in the Superior Court of Mecklenburg County, North Carolina alleging one count of race discrimination in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981 and the North Carolina Equal Employment Practices Act ("NCEEPA"), North Carolina General Statue § 143-422.2.  On March 22, 2010, Defendant removed the action to this Court, alleging federal question jurisdiction.  Removal has not been challenged and appears to be proper.  On March 22, 2010, Defendant filed the subject "Defendant's Rule 12(b)(6) Motion for Partial Dismissal," which has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIM

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

**B. State Law Claims in Violation of North Carolina Equal Employment Practices Act ("NCEEPA")**

Defendant moves that Plaintiff's state law claims of constructive discharge and race discrimination in violation of NCEEPA should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because these claims are not cognizable causes of action under North Carolina law. Defendant argues that North Carolina law clearly does not support a wrongful termination claim based on constructive discharge. Further, Defendant argues that to the extent Plaintiff claims he was subjected to race discrimination prior to his alleged constructive discharge, no such public policy claim exists under North Carolina state law. Plaintiff argues that his complaint alleges a state claim for wrongful discharge under the NCEEPA and that North Carolina law does support a claim for wrongful discharge based on racial discrimination as a violation of North Carolina public policy pursuant to the NCEEPA.

North Carolina is an employment "at will" state, meaning that employees can be fired at any time and for any reason, or even no reason, by an employer. Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). However, there is a limited public policy exception to the "at will" rule which states that "there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." Id. at 175, 381 S.E.2d at 447. The NCEEPA provides that:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2.

Courts have interpreted the NCEEPA's public policy declaration to allow a plaintiff to bring a common law claim for wrongful discharge. McLean v. Patten Communities, Inc., 332 F.3d 714, 721 (4th Cir. 2003) (remanding for consideration of plaintiff's claims for wrongful discharge under

NCEEPA on account of race and gender discrimination); Hughes v. Bedsole, 48 F.3d 1376, 1383-84 (4th Cir.1995) (limiting North Carolina public policy claim to wrongful discharge); Hughes v. Hewlett Packard Corp., No. 3:07-CV-216, 2008 WL 4372794, *2 (W.D.N.C. Sept. 22, 2008) (acknowledging that a discharge in violation of NCEEPA can give rise to a wrongful discharge claim). See also Jarman v. Deason, 173 N.C. App. 297, 299, 618 S.E.2d 776, 778 (2005) (finding NCEEPA clearly and distinctly announces North Carolina's public policy with respect to employment discrimination).

However, North Carolina law clearly does not support a wrongful termination claim based upon constructive discharge. See Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 598 S.E.2d 151 (2004), *rev's and dissent adopted by* 359 N.C. 625, 614 S.E.2d 531 (2005) (refusing to recognize public policy claims for constructive discharge, hostile work environment, or retaliation); Clark v. United Emergency Servs., No. COA07-592, 2008 WL 1723229, at *4 (N.C. Ct. App. April 15, 2008) (affirming dismissal of constructive discharge claim); Beck v. City of Durham, 154 N.C. App. 221, 231, 573 S.E.2d 183, 190 (2002) (affirming dismissal of constructive discharge claim); Graham v. Hardee's Food Sys., 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996) (affirming summary judgment on constructive discharge claim).

Federal courts considering the issue have consistently refused to recognize a North Carolina state public policy claim other than where the plaintiff was wrongfully terminated. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (holding NCEEPA's public policy does not allow a claim for sexual harassment in the absence of termination); Hughes v. Bedsole, 48 F.3d 1376, 1383-84 (4th Cir.1995) (limiting North Carolina public policy claim to wrongful discharge); McFadden v. Trend Community Health Servs., 114 F. Supp. 2d 427, 430 (W.D.N.C. 2000) (finding North Carolina law does not provide employee private cause of action for constructive discharge).

To state a claim for wrongful discharge in violation of public policy, the plaintiff has the burden of pleading that his termination occurred for a reason that violates public policy. Bratcher v. Pharm. Prod. Dev., Inc., 545 F.Supp.2d 533, 544 fn. 8 (E.D.N.C. 2009); McHan v. Cherokee County, NC, No. 2:06CV21, 2006 WL 3694540, *3 (W.D.N.C. December 13, 2006); Imes v. City of Asheville, 163 N.C.App. 668, 670, 594 S.E.2d 397, 398 (2004).

Plaintiff's Complaint initially sets forth the factual allegations in paragraph 17 that "Bridges then informed Plaintiff that he was terminated" and in paragraph 18 that "Plaintiff was constructively discharged from his employment with Target. . ." and then in "Count One," concludes in paragraph 22 that "the actions of Target's managers, coupled with the Defendant's failure to prevent, investigate or stop the acts of racial discrimination violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended §[sic]42 U.S.C. § 1981 and the North Carolina Equal Employment Practices Act, North Carolina General Statutes §143-422.1." (document #1-1 p. 4-5).

It should be noted at the outset that Plaintiff's allegations are not a model of clarity and his pleading mixes state common law claims with his federal claims of discrimination. However, taking Plaintiff's allegations as true and construing all reasonable inferences in his favor, the undersigned recommends that, at this stage of the case, Plaintiff has stated a claim for wrongful discharge in violation of NCEEPA. Therefore, the undersigned recommends that Defendant's Motion for Partial Dismissal be denied with respect to this claim.

To the extent, however, that Plaintiff's constructive discharge claim arises under NCEEPA, it must fail and the undersigned respectfully recommends that the Defendant's Motion for Partial Dismissal be granted in that regard.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the

"Defendants' Rule 12(b)(6) Motion for Partial Dismissal" (document #2) be **GRANTED**, that is, as to Count I to the extent that the constructive discharge claim arises under North Carolina public policy pursuant to NCEEPA and **DENIED** in all other respects.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same.  Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005);  <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties, <u>and to the Honorable Robert J. Conrad, Jr</u>.

Signed: April 22, 2010

**SO RECOMMENDED.**

David S. Cayer
United States Magistrate Judge